## G. W. GREER v. WESLEY YOUNG.

(No. 2956.)

CONTRACT — FRAUD. — Inducements offered by a seller that his property is cheap, or is a bargain at the price at which it is offered, are not classed as fraudulent material misrepresentations.

WRIT OF ERROR from Palo Pinto county. Opinion by WALKER, P. J.

STATEMENT.— This suit was instituted by Wesley Young against G. W. Greer on May 2, 1872, in the district court of Palo Pinto county, on a note made by said Greer, and payable to H. W. Young, bearing date November 13, 1868, payable twelve months after date, for $1,707 United States currency, which may be discharged with $1,200 coin in gold or silver, bearing ten per cent. interest per annum from date. The note showed a credit of $700 specie, May 1, 1870. The defense interposed was: 1. Failure of title to the cattle for which the note was given. 2. Fraudulent representations made by H. W. Young as to the number and value of the cattle. 3. Certain payments made by Greer on the note, among them one made April 13, 1870, for $712.50 to John Hittson, the agent of H. W. Young, and making the receipt of said Hittson for said sum an exhibit in the answer. The cause was tried November 11, 1873, and resulted in a verdict and judgment for the plaintiff for $1,590.27. Motion for a new trial was made and overruled, notice of appeal was given, and statement of facts was made, signed, approved and duly filed. The petition for writ of error was filed July 26, 1875, together with bond for costs. Service was had on the defendant in error November 10, 1875.

OPINION.— The appellant assigns as error that the verdict of the jury is excessive and contrary to the evidence adduced on the trial, and that the court erred in refusing to grant his motion for new trial. He also assigns several other grounds of error.

The verdict of the jury, under a proper legal effect to be given to the evidence, was excessive; there is no evidence to support it under any rational and consistent theory as to the construction placed upon the evidence by the jury. True, if we may suppose that the jury meant to allow the defendant the benefit of all the alleged payments claimed by the defendant as stated in his answer, or both items of payment indicated in the statement of facts, viz., the one indorsed on the note, and also that evidenced by Hittson's receipt, the excess against the defendant would be erroneous. It would be too great to warrant the inference that both of them were intended to be allowed by the jury, as the two combined, if considered as separate transactions and valid payments of different amounts and at different times, would have gone largely towards the entire satisfaction of the note at the time when the judgments were made, instead of leaving the large balance against the defendant which the jury found. The character of the evidence itself, in connection with the above view, fully justifies us in considering the question presented upon the assumption that the jury allowed to the defendant as a credit upon the note the sum of $700 specie, credited upon it on May 1, 1870, or else credited him with $712.50 from April 13, 1870, regarding that as being the actual payment which was credited on the note as above stated, and which Hittson, the receiptor, promised he would place upon the note. The statement of facts does not point to any other payments made by the defendant, and, as the evidence is herein presented, it might well have been concluded that the indorsement on the note had reference to the transaction referred to in the receipt. The want of any parol evidence tending to countervail such a construction is suggestive of the propriety of such a deduction. Hittson, as also the defendant, who were the actors in the transaction, were both competent to testify, and could have removed the inference which naturally arose from the face of both instruments which evidenced payments, and shown them to relate to distinct payments, if they had been able or willing to do so,

but neither their own nor any other testimony was offered on this subject. We conclude, then, that the jury acted upon one only of these acknowledgments of payment. It is clear that the defendant was entitled to the benefit of one or the other of them, and it is evident that the jury gave it to him.

The question then is, under the note sued on, what was the legal effect of the payment of one or the other of said sums if the same was paid in specie. "Specie" means gold or silver. The plaintiff accepted it as payment on the note. In our opinion, whether he might or might not have refused to accept it after the note became due, as it was at the time of payment, at the ratio of valuation which the terms of the note stipulated, as compared with United States currency notes; whether, in other words, he might have refused to accept it otherwise than at denominated value, and as of the same value as currency, because of defendant's failure to pay and discharge the note at maturity, we need not inquire. The fact that it was offered as payment *pro tanto* on the contract, which provided for the discrimination between the respective currencies on the part of the obligor, and that it was accepted and so credited upon the contract or note by the obligee, imports *prima facie* the acceptance of the payment on account of the stipulation contained in it in favor of the defendant, in case he elected to pay gold or silver; and the legal effect of the payment thus made would be to discharge the currency debt to the extent of the sum paid in the ratio which $1,200 bears to $1,707, or in the proportion of 1 to $1.42\frac{1}{4}$.

The payment thus made would be credited to the gold or silver amount, $1,200, after allowing interest at ten per cent. to date. If $712.50 shall be taken as the amount which was paid, the specie balance which would have been due at the date of the judgment would have approximated $890, and making like application as is above suggested at the time of payment, and reducing the specie balance then due to currency at the ratio of $1.42\frac{1}{4}$ to 1, and allowing in-

34

terest thereon to date of judgment in currency, the amount due to the plaintiff in currency would be, approximately, $1,267. This latter amount, it seems to us, is the true balance in favor of the plaintiff, and for which the verdict ought to have been rendered. The defendant had the privilege to discharge the note in gold or silver at $1,200 by compliance with its terms, but the note was, by its terms, a note payable in United States currency. His right thus to discharge it on other than the terms agreed on did not continue after his default, nor can he complain if his own default results in a hardship to himself, which, under a reversal of the course of the financial market by the depreciation of the United States currency, might have forced upon the plaintiff. See Baker v. Todd, 6 Tex., 274. The plaintiff was bound to acccept payment in currency, if tendered, whatever depreciation it might undergo, and at any time that payment should be offered.

We do not deem it necessary to consider the other assignments of error; if the charges complained of were subject to objection, it may be replied that the errors suggested could not have injuriously affected the defendant under the evidence, because there was no testimony tending to show representations made by the plaintiff to the defendant of a nature and character to mislead and deceive him in regard to the number and quality of the cattle. Inducements offered by a seller that his property is cheap, or is a bargain at the price at which it is offered, are not classed as fraudulent material misrepresentations. The law expects the purchaser to rely upon his own resources in respect to the availability of his purchase to himself, and so long as the seller misrepresents no fact upon which the purchaser has a right to depend and rely in estimating the value of the property or the availability of the trade, he may with impunity solicit the making of the contract by fair commendation of his property, and even persuasions to purchase it.

REVERSED AND REMANDED.